IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **COREY RECHTORIS,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**DOUGH MANAGEMENT, INC.** d/b/a **"Domino's Pizza,"** and **JAMES GRONEMANN,** individually,<br><br>Defendants. | Case No. 3:18-cv-708 |

### PLAINTIFF'S CONSENT MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiff Corey Rechtoris, individually and on behalf of himself and all others similarly situated ("Plaintiff"), through his attorneys, with the consent of Defendant Dough Management, Inc. ("DMI"), Defendant James Gronemann ("Gronemann") and Gronemann Pizza, Inc. ("GPI") (collectively with DMI and Gronemann, "Defendants"), moves the Court for final approval of the Parties' class action settlement.

A copy of the Parties' agreed-upon Settlement and Release Agreement ("Settlement Agreement") (DE 45), the Parties' Supplemental Settlement Agreement (DE 45), and the Class Notice and Claim Form (DE 46) have previously been filed under seal pursuant to the Court's Order dated January 23, 2020 (DE 36). The declarations of Plaintiff's attorneys in support of this motion and brief are attached along with a declaration from the Third-Party Administrator as "**Exhibit 1**" through "**Exhibit 3**". Plaintiff incorporates the following Memorandum in Support. The Parties have reached a settlement on behalf of all class members. The settlement meets the standards for approval of a class action settlement.

**MEMORANDUM IN SUPPORT**

**Facts and Procedural History**

Defendants own and operate a chain of 16 Domino's pizza stores in Indiana and Illinois. Plaintiff worked for DMI as a pizza delivery driver from February 2018 to September 2018.

On August 13, 2018, Plaintiff filed suit against Defendants alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the Fair Labor Standards Act ("FLSA") and the Indiana Minimum Wage Law ("Ind. MWL"). Plaintiff asserted those claims on behalf of himself and similarly situated delivery drivers currently and formerly employed by Defendants. Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing the workers' net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff alleged that Defendants applied the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Counsel for the Parties then discussed disclosure of data needed to evaluate liability and damages, followed by mediation. Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations. Based on those calculations, the Parties mediated for a full day on November 19, 2019 in Chicago, Illinois with a highly experienced wage and hour and class action mediator, Kay Wolf, Esquire. Through a full day of mediation, entailing multiple successive arm's-length offers and demands, the Parties reached a settlement in principle.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective action treatment. Plaintiff, on the other

hand, asserts that Defendants failed to comply with federal and state minimum wage requirements embodied in the FLSA and applicable state wage laws. Class Counsel understands Defendants' position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. All Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation, which motivated settlement.

The attorneys who negotiated on behalf of the Parties are experienced litigators, and they vigorously represented their clients' respective interests. **Exhibit 1**, Potashnick Decl., ¶¶ 2-10; **Exhibit 2**, Haynie Decl., ¶¶ 2-9.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Haynie Decl., ¶ 11; Potashnick Decl., ¶ 9.

On March 3, 2020, the Court granted Plaintiff's Consent Motion for (1) Certification of a Collective and Class Action for Settlement Purposes, (2) Approval of a Collective Action Settlement, (3) Preliminary Approval of a Class Action Settlement, (4) Approval of Notice to Putative Claimants, and (5) Scheduling a Hearing for Final Approval of the Parties' Class Action Settlement Agreement. DE 47, at 5-6. The Court further authorized dissemination of the Court-approved notice of settlement to the class and scheduled a final approval hearing for 11:00 a.m. eastern time on July 9, 2020. *Id.,* at 6-7.

Pursuant to that Order, the Third-Party Administrator, CAC Services Group, LLC, disseminated notice to the Class. After close of the notice period, 212 persons have filed claims, no class member has objected to the settlement or any of its terms, and no class member has

requested exclusion from the settlement.

**Key Settlement Terms**

The Parties have executed a Settlement and Release Agreement (Settlement Agreement"), which has been filed under seal.

The settlement classes are defined as:

> All persons who worked for Dough Management, Inc. or Gronemann Pizza, Inc.[1] at their Domino's pizza stores in Indiana and Illinois as delivery drivers at any time during the Release Period. The Release Period is defined as the period from January 1, 2017, through March 3, 2020.

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award. As zero class members opted-out of the settlement, each class member will receive a minimum payment as defined in the Settlement Agreement. The remaining settlement funds will be distributed to the 212 class members who have submitted claims based on the following equitable formula:

- All claimants will receive a minimum payment as defined in the Settlement Agreement.

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendant during the three-year period preceding the date the Court grants preliminary approval of the Agreement shall be his/her "Individual Miles." The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles."

---

[1] Gronemann Pizza, Inc. is not a named defendant, but is wholly owned and operated by Defendant James Gronemann. The inclusion of employees who worked for Gronemann Pizza, Inc. in the class is not, and shall not be deemed, an admission that Gronemann Pizza, Inc. and Defendants constitute a single enterprise under the FLSA or otherwise acted as joint employers.

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."
- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment.

Based on experience in prior cases, the Parties accounted for a claims rate of no greater than 35%. Following the settlement notice period, 212 individuals have submitted a claims form which is a rate of approximately 21% (212/1001) or less than 35% as anticipated.

All settlement payments will be treated as non-taxable payments in reimbursement for incurred job expenses.

The release binding Class Members who do not opt out is limited to wage and hour claims:

> Upon the Effective Date of the Settlement, the Class Representative and the Participating Class Members will release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the limitations period dating back to three years prior to the date the Court grants preliminary approval ("Release Period"), which arise out of, are based on, or encompass facts asserted in the action, including claims that arise under the FLSA, Indiana and Illinois wage and hour law, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Rechtoris seeks a modest service award.

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third (1/3) of the gross settlement amount. Defendants do not oppose or object to this

request for attorneys' fees and costs.

The Parties jointly selected a settlement administrator, CAC Services Group, LLC, whose fees will be paid from the gross settlement amount.

The Parties have fully complied with the terms of the Court's March 3, 2020 Order. There are no objections to the Agreement. Similarly, no Delivery Driver or Class Member has requested to participate in the Fairness Hearing. *See generally*, **Exhibit 3** (Declaration of third-party administrator, CAC Services Group, LLC). For the reasons set forth below, the Court should grant the Parties' motion.

## ARGUMENT

**A.    Applicable Law**

"As a rule, courts favor settlement of disputed claims, including class actions." *Anderson v. Torrington Co.,* 755 F.Supp. 834, 837 (N.D. Ind. 1991) (collecting cases). This is "particularly important" in complex, multi-party litigation which is likely to require substantial court time over a period of years. *In re VMS Ltd. P'ship. Sec. Litig.,* 1995 U.S. Dist. LEXIS 8079, *12 (N.D. Ill. Jun. 12, 1995) (citing *In re Four Seasons Sec. Laws Litig.,* 60 F.R.D. 598, 602 W.D. Okla. 1973)); *see also, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. *Id.* The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Court granted preliminary approval of the settlement on March 3, 2020. DE 47, at 5-6. Notice was disseminated pursuant to the Court's Order. *Id.*, at 6-7. This case is now at the final approval stage.

At the final approval stage, courts consider six factors: "'(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Shah v. Zimmer Biomet Hldgs.,* 2020 U.S. Dist. LEXIS 89141, *5-6 (N.D. Ind. May 21, 2020) (quoting *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863 (7th Cir. 2014); citing FED. R. CIV. P. 23(e)(2) (enumerating factors for courts to consider in determining whether a settlement is fair, reasonable and adequate)). Here, all six factors strongly indicate that final approval of the Settlement Agreement is warranted.

**Factor 1:** **The strength of the case for Plaintiffs on the merits, balanced against the extent of settlement offer**

Plaintiff's claim is supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt his evidence over Defendants' competing evidence and arguments. As some courts recognize, all claims may depend on competing expert vehicle costing testimony. *Perrin v. Papa John's Int'l., Inc. ("Perrin II"),* 2014 U.S. Dist. LEXIS 133974, *12 (E.D. Mo. Sept. 24, 2014) (recognizing battle of vehicle costing experts); *Villalpando,* 2016 Dist. LEXIS 53773, at *45. Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval."). Also, Plaintiff's claim may depend on what test the Court decides to apply. *Compare, e.g., Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018); *Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12 (battle of experts over reasonableness of employer's vehicle reimbursement rate) *with Hatmaker v. PJ Ohio, LLC,* 2019 U.S. Dist. LEXIS 191790, *1-22 (S.D. Ohio Nov. 5, 2019) (employer must either reimburse actual vehicle costs or reimburse at the IRS rate). Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986).

Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

Plaintiff further recognizes some risk of denial of class certification. *See Sullivan v. PJ United,*

*Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018). Plaintiff's counsel weighed that risk in negotiating the settlement amount.

The recovery here falls well within the range of comparable settlements approved around the nation in similar claims. *See, e.g., Prince v. Perfect Delivery, Inc.,* Case No. 8:17-cv-01950-BHH (D.S.C.), ECF Doc. 45-2, at 15-16 ("Plaintiff recovered the actual damages calculated by his counsel based on a reasonable reimbursement rate of $.45 per mile.") & ECF Doc. 62 (approving settlement); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14) (settlement equal to 2/3rds of actual damages based on $.45 per mile); *see also, e.g., Perrin v. Papa John's Int'l., Inc. ("Perrin I"),* 2013 U.S. Dist. LEXIS 181749, at *7 (E.D. Mo. Dec. 31, 2013) ("Plaintiffs propose to show on the basis of [vehicle costing expert] Lauria's analysis that Defendant's reimbursement rate did not reasonably approximate vehicle expenses. His preliminary analysis shows that in 2008 a reasonable approximation would have been, per mile, $0.47 in Arizona, $0.45 in Florida, $0.44 in Illinois, and $0.41 in Missouri, and one to two cents lower in 2010."); *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

Thus, a balancing of the strength of Plaintiffs' case on the merits against the extent of the settlement offer weighs heavily in favor of settlement approval.

**Factor 2: The complexity, length and expense of further litigation**

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for about six years or longer prior to settlement. Potashnick Decl., ¶ 18. As explained above, this litigation involved complex and novel issues. This litigation may be expensive, both to the Parties in terms of expert costs and time and to the Court in terms of deciding difficult and complex issues. By reaching a favorable settlement now, the Parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factors 3 & 4: The amount of opposition to the settlement and the reaction of members of the class to the settlement**

After dissemination of the Court-approved notice, no class member has opted-out or objected to any term of the settlement, which indicates that the class is generally pleased with the result. *See, e.g., Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement).

**Factor 5: The opinion of competent counsel**

Courts place significant weight on the endorsement of experienced class counsel. *In re Mexico Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Settlement Agreement, and this factor favors preliminary approval of the Settlement. *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 197 (N.D. Ill. 2018). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

**Factor 6:** **The stage of the proceedings and amount of discovery completed**

Although this claim settled early, counsel for the Parties have litigated several similar claims by pizza delivery drivers around the nation. Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate potential damages. That data was disclosed, then utilized to evaluate both potential liability and various damage scenarios. The Parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**C. Attorney's Fees and Costs Provided in the Settlement are Appropriate**

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. DE 45, Ex. 1, ¶ 3.2(A). The FLSA, the Indiana Minimum Wage Law ("Ind. MWL"), and the Illinois Minimum Wage Law ("IMWL") all contain fee and cost shifting provisions. 29 U.S.C. § 216(b); Ind. Code § 22-2-2-9; 820 ILCS § 105/12(a).

The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation"); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to vindicate their rights."). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common

11

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999).  The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees equal to of one-third (1/3) of the total settlement amount.  Courts in this Circuit have approved the same percentage. *See, e.g., Burkhalter v. City of Ft. Wayne,* 750 F.Supp.2d 990, 997 (N.D. Ind. Nov. 1, 2010) ("counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action.") (collecting cases); *Day v. NuCO2 Mgt., LLC,* 2018 U.S. Dist. LEXIS 218431, *4 (N.D. Ill. May 18, 2018) (awarding one-third fee in FLSA claim) (collecting cases); *City of Greenville v. Syngenta Crop Prot., Inc.,* 904 F.Supp.2d 902, 909 (S.D. Ill. 2012) (approving one-third fee award).

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983).

> ***Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.**

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")).

Under the defendants' threats of seeking sanctions in both *Wass* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiff's Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims there, and ultimately this settlement.

One district court recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.
>
> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett*, 259 F. Supp. 3d at 368; *see also, e.g., Jimenez v. Pizzerias*, LLC, 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and

innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts, obtained by Plaintiff's Counsel, may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while these prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial may be expert-intensive and thus costly. Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour litigation. Haynie Decl., ¶ 7; Potashnick Decl., ¶¶ 2-5. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)). *Hackett* particularly noted that "[c]hallenging compensation for pizza delivery drivers under the FLSA is not a cut and dried affair." *Id.*, 259 F. Supp. 3d at 369. *Hackett* further found that it is particularly appropriate to award Plaintiffs' counsel lodestar rates because due to the uncertain nature of

14

challenging compensation for delivery drivers under the FLSA, "it is quite likely that, but for this lawsuit, [Defendants'] drivers in Defendants' stores would not have known that they had a viable cause of action and thus, in the end, received more compensation than they anticipated." *Id.*

As noted above, given the novelty and difficulty of cases involving minimum wage laws based on under-reimbursed vehicle costs, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the Parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiff and all other delivery drivers. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged unreimbursed vehicle expense. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – all class members will receive at least a minimum payment as defined in the Settlement Agreement.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 40% of the common fund. However, Plaintiff's Counsel cut their percentage to one-third (1/3) in an effort to resolve this case and increase the amount paid to Plaintiffs.

### *Hensley* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

To date, Plaintiffs' counsel's firms combined have already spent over 200 hours litigating this case with no assurance of any recovery at all. Haynie Decl., ¶ 15; Potashnick, ¶ 13. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced

15

by the named Plaintiff and by Defendants; opposing Defendants' motion to dismiss; analyzing Defendants' delivery, mileage and reimbursement data; communicating with the named Plaintiff; creating computerized damages models; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. Haynie Decl., ¶ 15; Potashnick, ¶ 16.

Plaintiff's lead-counsel's lodestar is based on their recently approved hourly billing rates of $500.00 each for Mssrs. Haynie and Potashnick. Haynie Decl., ¶ 14; Potashnick, ¶ 17.

Mr. Potashnick has been in private practice for 27 years. Potashnick Decl., ¶ 2. He has been approved at a rate of $500.00 per hour within this Circuit. *See, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (awarding $500.00 per hour for Mark Potashnick); *see also, e.g., Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-296-TCB (N.D. Ga. Jan. 28, 2020) (ECF Doc. #'s 139, at 8 (finding reasonable $500.00 per hour rate for Mark Potashick) & 138, at 5 (requesting $500.00 per hour rate for Mark Potashnick); *Heuberger,* 2019 U.S. Dist. LEXIS 118174, at *13-14 (approving $450.00 per hour); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (same); *Hackett,* 259 F.Supp.3d at 367-69 & n.2 (same); *Bodon v. Domino's Pizza, LLC,* 2015 U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. Jun. 4, 2015) (same). Mr. Haynie was approved at a rate of $500.00 per hour as recently as February of this year in *Bessey v. Mand Made Pizza, Inc.,* a similar claim in which plaintiff pizza delivery drivers alleged minimum wage violations resulting from under-reimbursed vehicle costs. Case No. 1:18-cv-938 (D. Colo. 2020) (ECF Doc. # 65).

A "lodestar cross-check" can be performed based on counsel's time spent to date as presented in the declarations. Haynie Decl., ¶ 15; Potashnick, ¶ 13. Here, even when no accounting is done for time to be incurred, and applying a lower-end rate, that multiplier is still less than 2. That

16

multiplier will continue to decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class members, but this multiplier already falls well within the range of multipliers approved in this Circuit. *See, e.g., Ramsey v. Philips N. Am. LLC,* 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.,* 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous individual Plaintiffs.

### *Hensley* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved in the same claims against other pizza delivery companies. *See, e.g., Wilson v. DFL Pizza, LLC,* 2019 U.S. Dist. LEXIS 114039, *12 (D. Colo. Jul. 10, 2019) (awarding one-third fees); *Kirkwood v. Noble Food Grp., Inc.,* 2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wash. Jan. 22, 2019) (same); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017) (same); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (**Exhibit 4**) (same); *Hoffman,* 2017 U.S. Dist. LEXIS 459, at *30 (same); *Hackett,* 259 F.Supp.3d at 367-69 (same); *Prince v. Perfect Delivery, Inc.*, Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62), at 10-11 (same).

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First,

it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

### D.    Plaintiff Rechtoris Deserves a Service Award

Services awards, also known as "incentive awards," "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001); *Bickel v. Sheriff of Whitley Cnty.,* 2015 U.S. Dist. LEXIS 38311, *18-19 (N.D. Ind. Mar. 26, 2015); *see also*, *Otis v. TAH Pizza, Inc. et al dba Domino's*, 2:18-cv-00111-HSM-MCLC (E.D. Tenn.)(approving similar service award involved here).

The modest service award sought for Mr. Rechtoris should be approved because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. He was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiffs' counsel. Mr. Rechtoris sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls and email communications with counsel. He also participated in the settlement process. Therein, Mr. Rechtoris advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been achieved.

Haynie Decl., ¶ 13; Potashnick Decl., ¶ 12. In light of these efforts, payment of a service award in the amount reflected in the attached Settlement Agreement is justified. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award). Defendants do not oppose the service award.

Importantly, Mr. Rechtoris will provide a general release as additional consideration for a service award, which is another reason to approve that award. *See, e.g., Slaughter v. Wells Fargo Advisors, LLC,* 2017 U.S. Dist. LEXIS 123535, *41 (N.D. Ill. Aug. 4, 2017).

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an Order that grants final approval to the Parties' settlement, and dismisses the claims with prejudice, with each Party to bear its own fees and costs except as previously agreed between them.

RESPECTFULLY SUBMITTED,

*/s/ David Matthew Haynie*

D. Matthew Haynie
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75020
Phone: 214-210-2100
Fax: 214-346-5909
matthew@foresterhaynie.com

-and-

>Mark A. Potashnick, Esq.
>**WEINHAUS & POTASHNICK**
>11500 Olive Blvd., Suite 133
>Saint Louis, MO 63141
>(314) 997-9150
>markp@wp-attorneys.com
>
>**ATTORNEYS FOR PLAINTIFF AND**
>**THE PROPOSED CLASS**

## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

>*/s/* David Matthew Haynie
>**D. Matthew Haynie**